In the Matter of NICHOLAS, INC., Debtor.

NICHOLAS, INC., Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD, Thomas Lauritsen and Local 8–406, Oil, Chemical & Atomic Workers International Union, AFL–CIO, Defendants.

Bankruptcy No. 85–0314.

United States Bankruptcy Court, D. New Jersey.

Nov. 20, 1985.

Kleinberg, Moroney, Masterson & Schachter by David S. Hollander, Millburn, N.J., for debtor.

Karen Cordry, Washington, D.C., for N.L.R.B.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

This opinion deals with an adversary proceeding initiated by the debtor against the National Labor Relations Board (hereinafter N.L.R.B. or the Board) and the union local representing the former employees of the debtor.

In its complaint, the debtor seeks to permanently enjoin the N.L.R.B. from conducting a hearing on certain unfair labor practices filed against it, and for a determination that the debtor is not in violation of any N.L.R.B. regulations; further, that it is not liable for any damages or compensation arising out of the foregoing allegations of unfair labor practices.

The N.L.R.B. has filed its opposition by means of a combined motion seeking to dismiss the debtor's complaint, vacate the automatic stay with respect to the Board's proceedings, and deny the debtor's prayer for injunctive and declaratory relief. In addition, a subsequent motion was made to strike the debtor's reply brief.

For the reasons set forth below, this Court denies the debtor's prayer for relief and grants the N.L.R.B.'s motion to vacate the automatic stay. The within opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

### I.

■ Drawing upon the parties' recitations of fact, it appears that the debtor filed its petition in reorganization on February 23, 1984. Shortly thereafter, the debt-

or met with its employees and union representatives, ostensibly to negotiate modification of the then existing collective bargaining agreement. The negotiations failed in their endeavor.

In mid-April of 1984 the situation grew tense, resulting from the debtor's expressed intention to reject the collective bargaining agreement, pursuant to § 365 of the Bankruptcy Code, unless some modification could be had. A dispute arose when employees of the debtor, apparently concerned with the state of the debtor's financial health, demanded they be paid in advance each week by means of cash or certified check. The disagreement erupted into a job action by the workers, followed by the termination of their employment by the debtor. Finally, the debtor did seek and obtain rejection of the union contract, the order to that effect entered on July 30, 1984.

On July 10, 1984, approximately three weeks prior to the debtor's rejection of the collective bargaining agreement, an unfair labor practices complaint was filed with the N.L.R.B. A hearing on the complaint before an administrative law judge was held on August 5, 1985. As of this writing, briefs were being submitted in that proceeding. The proceeding before the N.L.R.B. on the unfair labor practices complaint is the subject of this adversary proceeding. Debtor seeks to enjoin the continuation of the noted proceeding and a determination that the debtor is without guilt or liability as to the allegations therein.

The legal argument of the debtor is bottomed upon two points of law—(a) the automatic stay mandates the N.L.R.B. proceedings be enjoined; (b) injunctive relief against the N.L.R.B. may also be properly granted under § 105 of the Bankruptcy Code. For its rationale, the debtor contends that the N.L.R.B. proceedings are a "threat" to its estate.

In its response, the N.L.R.B. contends that the automatic stay does not apply to the proceedings it has instituted; further, that injunctive relief pursuant to § 105 of

the Code is unwarranted for the reason that unfair labor practice complaints are exclusively within the jurisdiction of the Board and, finally, that the proceedings at issue are not a "threat" to the estate of the debtor.

As the arguments made raise several points of law, the Court addresses them *seriatim.*

## II.

The Bankruptcy Code provides for a stay of all actions, including judicial and administrative, against the estate of the debtor. 11 U.S.C. § 362[a][1]. There are, however, certain enumerated exceptions. 11 U.S.C. § 362[b] *et seq.* Pertinent to this case is the exception for the actions of governmental units to enforce their police or regulatory powers. 11 U.S.C. § 362[b][4].

Collier tells us "the policy of the Code is to permit regulatory, police and criminal actions to proceed in spite of § 362[a][1], but not to permit a seizure of property without a bankruptcy court order." 2 *Collier on Bankruptcy* ¶ 362.05[4] (15th ed. 1979). "Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 343, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6299. *See also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5883.

The inquiry to be made by this Court thus becomes twofold. Is the N.L.R.B. a governmental unit, and would its hearing of an unfair labor practice complaint be an exercise of its police or regulatory power? Both questions were answered in the affirmative in the seminal case of *N.L.R.B. v. Evans Plumbing Co.,* 639 F.2d 291 (5th Cir.1981). In its *per curiam* ruling on a petition by the N.L.R.B. for summary judgment against an employer, the Fifth Circuit opined:

It is clear that the NLRB is a governmental unit. This action was undertaken to enforce the federal law regulating the relationship between employer and employee. We can safely conclude therefore that this is an exercise of police or regulatory powers which places it within the § 362[b][4] exemption to the automatic stay.

*Id.* at 293. The above is the prevailing view among several other circuits. *See Ahrens Aircraft, Inc. v. N.L.R.B.,* 703 F.2d 23, 24 (1st Cir.1983); *In re Mansfield Tire and Rubber Co.,* 660 F.2d 1108, 1114 (6th Cir.1981); *In the Matter of Shippers Interstate Service, Inc.,* 618 F.2d 9, 11–13 (7th Cir.1980); *In re Bel Air Chateau Hospital, Inc.,* 611 F.2d 1248, 1250–51 (9th Cir.1979) (the latter two cases being decided under the provisions of the Bankruptcy Act). In the bankruptcy courts, there is the noteworthy case of *D.M. Barber, Inc. v. Valverde (In re D.M. Barber, Inc.),* 13 B.R. 962, 8 B.C.D. 188 (Bankr.N.D.Tex.1981).

Following *Evans Plumbing, supra,* Bankruptcy Judge Flowers found proceedings before the N.L.R.B. to enforce provisions of the National Labor Relations Act to be proceedings within the scope of the exception to the automatic stay. Further, the Board's authority to fix liability for labor law violations is likewise excepted because it is incident to the police or regulatory power of the Board. *Id.,* 13 B.R. at 963. However, the exception does not apply to the enforcement of a money judgment. *Id.* at 963–64.

Considering the foregoing, this Court necessarily reaches the conclusion that the automatic stay is inapplicable herein. The N.L.R.B. is a governmental unit exercising its police or regulatory powers. By the prevailing interpretations of the exceptions to the automatic stay, injunctive relief is unavailable against the Board on that ground. Moreover, the Court notes that the complained of proceedings have not yet reached the stage of enforcing a money judgment. Falling short of such prohibited activity, there is no basis to deny the exception to the stay.

## III.

■ By demanding injunctive relief under the aegis of § 105 of the Bankruptcy Code, the debtor has made it imperative that this Court analyze and discuss the jurisdiction and powers of the N.L.R.B. in relation to proceedings in the bankruptcy court.

The N.L.R.B. is an administrative body created by Congress in 1935, and charged with the task of implementing and enforcing the National Labor Relations Act statutes prohibiting unfair labor practices. Gorman, *Basic Text on Labor Law* 7 (1976). Specifically, the Board is empowered to prevent any person from engaging in any unfair labor practice affecting commerce. 29 U.S.C. § 160[e] and [f].

It is crucial here to determine how the Board's jurisdiction comports with that of the bankruptcy court. Fortunately, the Supreme Court has spoken on this issue.

> Congress declared that certain labor practices should be unfair, but it prescribed a particular method by which such practice should be ascertained and prevented. *By the express terms of the Act, the Board was made the exclusive agency for that purpose....*
>
> So far, *it is apparent that Congress has entrusted to the Board exclusively* the prosecution of the proceeding by its own complaint, the conduct of the hearing, *the adjudication* and the granting of appropriate relief.

*Amalgamated Workers v. Edison Co.,* 309 U.S. 261, 264–65, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940) (emphasis supplied). The foregoing excerpt emerged from the leading case of *Myers v. Bethlehem Shipping Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), wherein that court dealt with an affirmation by the First Circuit Court of Appeals of a district court order enjoining the N.L.R.B. from conducting hearings on complaints alleging unfair labor practices. *Id.* at 43–44, 58 S.Ct. at 460. In its reversal, the high court found the district court to be without jurisdiction to enjoin the proceedings before the N.L.R.B. due to the Congressional investiture of power over such matters in the Board and the circuit courts. *Id.* at 48, 58 S.Ct. at 462. Worthy of note is Justice Felix Frankfuter's admonishment to the federal judiciary in *San Diego Building Trades Council, etc. v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (case containing a ruling that state labor regulation is pre-empted by the Congressional intent to vest the N.L.R.B. with exclusive authority to enforce federal labor law):

> When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the states as well as *the federal courts must defer to the exclusive competence of the National Labor Relations Board* if the danger of state interference with national policy is to be averted.

*Id.* at 245, 79 S.Ct. at 780 (emphasis supplied).

These broad pronouncements of the exclusivity of the Board's jurisdiction have been made equally applicable to proceedings in bankruptcy. "It is the Board, not the referee in bankruptcy nor the court, that has been entrusted with authority to determine what measures will remedy the unfair labor practices." *Nathanson v. N.L.R.B.,* 344 U.S. 25, 30, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). In that decision, the Supreme Court further advocated that the bankruptcy court "accommodate itself to the administrative process" of the N.L.R.B. *Id.* Interestingly, the rule of *Nathanson* had been embraced by this jurisdiction a decade before the Supreme Court's decision. "The jurisdiction of a United States District Court in bankruptcy does not embrace the power to treat with a debtor's unfair labor practices which affect commerce." *N.L.R.B. v. Baldwin Locomotive Works,* 128 F.2d 39, 44 (3d Cir.1942) (modifying and enforced an order by the Board).

The primary concept to be drawn from the foregoing is the recognition of a clear Congressional intent to commit the matter of adjudicating unfair labor practices to the jurisdiction of the N.L.R.B. It follows that this Court, in its considerations, must commence with the assumption that the debt-

or's prayer for relief is inappropriate because of the Court's lack of jurisdiction in such matters. Given the inescapable weight of the authorities in support of the Board's exclusive jurisdiction, it is incumbent upon the debtor to demonstrate a cognizable reason for this Court to override the presumptive jurisdiction of the N.L.R.B.

## IV.

In its legal argument, the debtor has placed great reliance upon the celebrated case of *N.L.R.B. v. Bildisco and Bildisco, et al.*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), asserting that the Supreme Court's ruling therein establishes an exception to the otherwise pervasive jurisdiction of the N.L.R.B. While it cannot be argued that *Bildisco* has, indeed, impacted heavily on the interaction between the Bankruptcy Code and the labor laws, this Court disagrees with the debtor and does not find *Bildisco* to reach the circumstances of this case.

In the opinion authored by Justice Rehnquist, the high court declares its "determination that a debtor-in-possession does not commit an unfair labor practice by failing to comply with § 8[d] [29 U.S.C. § 158[d]]" of the National Labor Relations Act. An examination of the dispositive portion of the *Bildisco* opinion reveals heavy reliance on § 158[d]. Moreover, § 158[a][5] of Title 29 is the only other statutory provision mentioned in *Bildisco* which was enacted as part of the National Labor Relations Act of 1935. Both these provisions speak to the duty of an employer to collectively bargain with its employees. 29 U.S.C. § 158[a][5] and [d].

Contrast this with the unfair labor practices complaint at issue here. The N.L.R.B. complaint is grounded on allegations of violations of 29 U.S.C. § 158[a][1] and [3]. See Memorandum in Support of Combined Motion for the N.L.R.B. at 2–3. The subject matter of the latter provisions are quite dissimilar from those ruled upon in *Bildisco*. Section 158[a][1] prohibits, *inter alia*, any interference by the employer with the employees' rights to engage in concerted activity. 29 U.S.C. § 158[a][1]. Section 158[a][3] forbids discrimination with regard to encouraging or discouraging membership in any labor organization. 29 U.S.C. § 158[a][3]. Heed must also be taken of the N.L.R.B.'s averment to this Court that the charges raised in its unfair labor practices complaint are wholly unrelated to the collective bargaining issues underlying the contested matter in *Bildisco*. Memorandum, *id.* at 3 n. 1.

This Court is of the opinion that the more correct, albeit more conservative, view of *Bildisco* is that it decided narrow questions of the viability of certain portions of the National Labor Relations Act in the context of bankruptcy proceedings. As such, the high court's ruling should be restricted to those aspects it specifically addressed. Adoption of the debtor's interpretation would lead this Court to conclude that *Bildisco* vests the bankruptcy courts with the power to enjoin *all* N.L.R.B. proceedings, irrespective of the allegations made in the pending unfair labor practice complaint. To do so would carry *Bildisco* beyond its plainly evident parameters which would, indeed, be overreaching and which this Court declines to do.

## V.

Included in the foregoing *Bildisco* argument is the debtor's quotation of *N.L.R.B. v. Superior Forwarding, Inc.*, 762 F.2d 695 (8th Cir.1985). For reasons similar to those aforementioned, the Court finds that *Superior Forwarding* does not support the debtor's assertions.

In its opinion affirming a lower court injunction imposed upon an N.L.R.B. proceeding, the Eighth Circuit characterized the Board hearing in question as an adjudication of an unfair labor practices complaint related solely to the purported modification or rejection of the debtor's collective bargaining agreement. *Id.* at 699–700. Important here is the disclosure in the opinion that, finding no other allegations of unfair labor practices, the appellate court

addressed itself solely to charges arising from the collective bargaining agreement.

The Board does not direct us to any other allegations in the complaint which are "independent" of the collective bargaining agreement. After a close reading of the Board's complaint, we are unable to find any. Thus, we find no merit to the contention that the charges against Superior were independent of the collective bargaining agreement.

*Id.* at 700. By thus framing the issue as identical to that in *Bildisco*, the Court of Appeals correctly drew upon the Supreme Court's ruling in the latter case.

Yet it is for that exact same reason that *Superior Forwarding* is inapplicable to the instant matter. The *Superior Forwarding* matter can only be stylized as a *Bildisco*-type question because it touches upon the collective bargaining agreement alone. The matter presently before the Court, as already stated, is not a *Bildisco* question, as it concerns unfair labor practices independent of the collective bargaining agreement. The propositions set forth by *Superior Forwarding* are, therefore, not controlling in this matter.

Additionally, this Court has one further difficulty with *Superior Forwarding*. A statement is made in the opinion that, while admittedly it is not all encompassing, "the language in *Bildisco*, by direct implication, supports the proposition that a bankruptcy court can enjoin the Board from filing or processing unfair labor practice charges." *Id.* at 699. A facial reading would lead one to believe that the Eighth Circuit interprets *Bildisco* as having global implications empowering the federal courts to enjoin any N.L.R.B. proceeding if a debtor is involved. As discussed, *supra,* this Court believes such an expansive reading of *Bildisco* to be ill-advised and is, therefore, reluctant to adopt *Superior Forwarding* in this circuit.

### VI.

Finally, the debtor alleges that the Board proceeding is a "threat" to the assets of its estate. The debtor rationalizes that the presence of such a "threat" is just cause for imposition of a discretionary stay. Turning to the facts, the debtor has, in both its papers and oral argument, defined the "threat" as the costs of litigating the pending unfair labor practices complaint before the N.L.R.B. By its own assertions, the debtor has narrowly perceived the "threat" as the expenses of litigation. Referring to the extent of the "threat", the debtor contends that sums of $25,000 to $50,000 would have to be expended to defend this action, including an appeal to the Third Circuit. Debtor's Brief in Opposition at 3. An analysis of how this figure was arrived at is not offered.

Examining the prevailing law on the subject, the cases tell us those courts which have considered the question have uniformly found the bankruptcy courts to be with authority to issue a stay, pursuant to § 105, to enjoin federal regulatory proceedings where those proceedings "threaten" the debtor's estate. *N.L.R.B. v. Superior Forwarding, Inc., supra* at 698; *In re Shippers Interstate Service, Inc.,* 618 F.2d 9, 13 (7th Cir.1980); *In re Bel Air Chateau Hospital, Inc.,* 611 F.2d 1248, 1251 (9th Cir.1979). Issuance of such a stay is purely discretionary. *Id.* The evaluation of the alleged "threat" is a question of fact, to be decided by the bankruptcy court on a case by case basis. *Superior Forwarding, supra* at 699. *See generally Shippers Interstate,* 618 F.2d at 13; *Bel Air Chateau Hospital,* 611 F.2d at 1251.

■ We turn now to the question of whether the costs of litigation constitute a specific threat to the estate of the debtor. The Court of Appeals for the Third Circuit has declared that litigation expenses do not constitute an injury sufficient to justify the enjoining of litigation against a debtor. *In re Davis,* 691 F.2d 176, 178 (3d Cir.1982), *quoting Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).

In view of the state of the law, as referred to above, it is clear that the debtor has not made out the existence of a "threat" worthy of this Court issuing a stay. As a matter of law, the Third Circuit

plainly stated in the *Davis* case, *supra,* that litigation expenses are not a "threat" *per se.* Although the N.L.R.B. made the debtor aware of *Davis,* N.L.R.B. Memorandum in Support at 13, its pleadings are bereft of any attempt to distinguish the instant matter from the Third Circuit's holding. Given no just cause to do otherwise, this Court will follow the pronouncements of the Third Circuit and rejects the debtor's argument that costs of litigation are a "threat" to the debtor.

To be sure, the debtor's assertions fall far short of the mark on the facts as well. As previously noted, the debtor has not offered any cogent facts to substantiate its cry of "threat". The debtor neglected to make a perfunctory analysis of its calculation of the "threatening" costs of litigation. Similarly, the debtor failed to relate said costs to the resources of the estate. Absent some basis for comparison, the Court is left without a means to ascertain the extent of the "threat" to the assets of the estate. Without some gauge to measure by, the "threat" cannot be perceived as substantial. It cannot be denied that some "regulatory proceedings will not threaten the assets of a bankrupt estate, even though they may diminish them." *Superior Forwarding, supra* at 699. This Court, utilizing its discretion and adjudging this case on all of the foregoing, finds no "threat" to the debtor's estate and will not enjoin the N.L.R.B. on such a ground.

## VII.

Considering all of the foregoing, the Court must deny the debtor's prayer for injunctive relief from the N.L.R.B. and, further, absent jurisdiction to do so, the Court will not determine that the debtor has not violated any Board regulations or has no liability arising thereunder.

This Court finds, specifically, (1) that the N.L.R.B. hearing on the unfair labor practices complaint filed against the debtor is within the exercise of police or regulatory power exception to the automatic stay; (2) a discretionary stay to be issued, pursuant to § 105, would be improper herein because

(a) there is a clear Congressional intent to have labor issues resolved by the N.L.R.B. and not the bankruptcy courts, (b) the instant matter is not within the ambit of *Bildisco* or its progeny *Superior Forwarding,* and (c) on the law and the facts, the debtor has not shown that the complained of N.L.R.B. hearing is a "threat" to the assets of the debtor's estate.

As for the combined motion of the N.L.R.B., the motion to dismiss the complaint of the debtor is granted, and the automatic stay is hereby vacated with respect to the Board proceeding. In view of the decision herein, the subsequent motion to strike the debtor's reply brief is declared moot.

Submit an order in accordance with the above.